```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                      CENTRAL DIVISION at LEXINGTON

KOSSA DIOMANDE,                    )
                                   )
     Plaintiff,                    )
                                   )    Civil Case No. 14-cv-171-JMH
v.                                 )
                                   )
TOYOTA MOTOR MANUFACTURING,        )
KENTUCKY, INC., et al.,            )    MEMORANDUM OPINION AND ORDER
                                   )
     Defendants.                   )

                                 ***
```

This matter is before the Court upon the Motions for Summary Judgment of Defendant Kelly Services, Inc. ("Kelly") [DE 7], and Toyota Motor Manufacturing, Kentucky, Inc. ("TMMK") [DE 11], with respect to which Responses and Replies have been filed [DE 19, 23, 24]. In addition to his Response [DE 19], stating his objections to the Motions for Summary Judgment, Plaintiff Kossa Diomande has filed a Motion to Conduct Discovery [DE 20] pursuant to Fed. R. Civ. P. 56(f) and a Motion to Amend [DE 21] his Complaint, to which Responses and Replies [DE 25, 26, 29, 30] have been filed. These motions are ripe for decision, and for the reasons stated below, Kelly's Motion for Summary Judgment shall be granted, TMMK's Motion for Summary Judgment shall be denied, Plaintiff's Motion for Discovery shall be denied, and his Motion to Amend shall be granted.

**I.**

Kelly is a staffing agency with an office located at the TMMK manufacturing facility in Georgetown, Kentucky. Kelly provides temporary employees to its customer, TMMK. Plaintiff sought employment and completed an Agreement with Kelly on September 6, 2009, which addressed a wide variety of matters. Among other things, the Agreement specified that Diomande "may be offered employment with Kelly" and that Diomande "underst[ood] I am not an employee of any customer to which Kelly assigns me, regardless of any customer statement, conduct, or belief." The same Agreement defined "'customer[s]' and 'potential customer(s)' of Kelly" as "any entity to which I have been assigned by Kelly, or have been exposed through Kelly-arranged interviews, meetings or recruiting efforts." [*Id.*] The Agreement also contained a Limitations on Actions clause, providing that,

> I agree that any action, administrative claim, or suit brought by me relating to my application for employment, my employment, and/or termination of my employment, and which claim would otherwise be timely, must be brought within 12 months of the date my last assignment ends, regardless of the termination circumstances, and I waive any statute of limitations to the contrary.

[DE 7-2 at 8, Page ID# 39.] While Plaintiff affies that he does not recall the terms of the Agreement, he does not deny that he

signed the Agreement nor does he state or intimate that his entry into the Agreement was anything less than knowing and voluntary at the time that it was made. [*See* DE 19-2 at 1, Page ID# 160.]

Kelly offered Plaintiff employment, and he was then placed to perform duties at TMMK. Eventually, his placement at TMMK and his employment with Kelly were terminated on March 12, 2013. Plaintiff filed a charge of discrimination with the EEOC against Kelly and TMMK on July 6, 2013, and the EEOC issued a Notice of Right to Sue against Kelly and TMMK on January 28, 2014. Plaintiff commenced this action on April 28, 2014, some six weeks after the twelve month period in which to bring any "action, administrative claim, or suit" provided for in his Agreement with Kelly had expired. In his Complaint, he avers that Defendants Kelly and TMMK have committed violations of Title VII of the Civil Rights Act of 1964 and KRS Chapter 344 because he was discriminated against and subjected to a hostile work environment due to his race and national origin and that he retaliated against because of his complaints concerning harassment and discrimination on the job.

## II.

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the factual evidence and all reasonable inferences must be construed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).

The judge's function on a summary judgment motion is not to weigh the evidence, but to decide whether there are genuine issues of material fact for trial. *Anderson*, 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Anderson*, 477 U.S. at 242. A genuine dispute exists on a material fact, and, thus, summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248; *Summers*, 368 F.3d at 885.

### III.

As an initial matter, the Court sees no reason, in this instance, to decline to enforce the contractual agreement between Kelly and Diomande in which the parties agreed that he would limit his time to bring suit to twelve months from the end of his assignment. Under Kentucky law, parties may agree to limit the time available for an injured party to bring suit, so

long as the agreed upon interval provides a potential plaintiff reasonable time to initiate the action. *See Dunn v. Gordon Food Servs., Inc.*, 780 F. Supp. 2d 570, 573 (W.D. Ky. 2011) (holding that parties to employment contract could agree to shortened period of limitations in which to bring claims arising out of their employment). While Diomande argues that enforcement of such a contractual provision should be precluded in the face of a Title VII claim because it would somehow interfere with the EEOC's jurisdiction over that charge for a 180 day period after the filing of the charge, that is not the situation before the Court.

Diomande had a number of weeks in which to commence this suit after the 180 day period had expired and after receiving his right to sue letter before the expiration of the twelve-month limitations period set forth in the Agreement. This is distinct from the situation presented in *Fritz v. FinancialEdge Community Credit Union*, 835 F. Supp. 2d 377 (E.D. Mich. 2011) (holding that judicial consideration of a period of 180 days or less would be preempted by the EEOC's period of exclusive jurisdiction and that the court was precluded from enforcing a 180-day contractual time limitation on bringing a Title VII claim), which Diomande argues is analogous. The court concludes that there is no reason to decline to enforce the Agreement simply because a Title VII claim is involved.

Nor is the Court persuaded that his claim is timely because he filed an EEOC charge within one year of the end of his assignment and employment. The language of the Agreement reads: "that any action, administrative claim, **or** suit brought by me ... must be brought within 12 months of the date my last assignment ends." [DE 7-2 at 8, Page ID# 39.] The fact that he timely filed an EEOC charge does not relieve him of an obligation to then timely commence a lawsuit in the court system.

Thus, the Court returns to the simple application of the Agreement's language to the facts at hand. Plaintiff's placement at TMMK was ended and his employment with Kelly were terminated on March 12, 2013. He commenced this action on April 28, 2014, some six weeks after the twelve-month period provided for in his Agreement with Kelly. Accordingly, his claim against Kelly shall be dismissed as time-barred.

## IV.

The Court turns next to TMMK's argument that, equally, Diomande's claims against it should be dismissed as time barred based on the same provision in Diomande's contract with Kelly. TMMK argues that it is an intended third-party beneficiary of the Agreement because Kelly, a staffing agency, supplies its employees to provide services for other entities and that, in this instance, Kelly's employee, Diomande, provided services to

TMMK.  TMMK takes the position that a staffing agency confers upon its customer, as a third-party to the agreement between the staffing agency and the employee, the ability to enforce the agreement between the staffing agency and its employee.

Under Kentucky law, third parties to a contract may enforce the terms of the contract by showing the parties to the contract intended by their agreement to benefit the third parties directly. *See Sexton v. Taylor County*, 692 S.W.2d 808 (Ky. Ct. App. 1985).  Such intent need not be expressed in the agreement itself, as it may also be evidenced by the surrounding circumstances. *Id*.  An actual and direct promise for the benefit of a third party will be sufficient to create privity between the promisor and the third party beneficiary.  *Louisville Gas & Elec. Co. v. Cont'l Field Sys., Inc.*, 420 F. Supp. 2d 764, 770 (W.D.Ky. 2005).  An incidental beneficiary does not acquire such a right.  *Presnell Constr. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004); *Louisville Gas & Elec. Co.*, 420 F. Supp. 2d at 770 (W.D.Ky. 2005) (defining incidental beneficiary as beneficiary who is not intended beneficiary). Third parties will often benefit from performance of service contracts, but those third parties do not typically rise to the level of intended beneficiaries.  *Louisville Gas & Elec. Co.*, 420 F. Supp. 2d at 771.

TMMK urges the Court to look at the decision in *Dunkley v. Mellon Investor Servs.*, Civil Action No. 06-3501(JAG), 2007 WL 3025730 (D.N.J. Oct. 15, 2007), as persuasive. In *Dunkley*, a staffing agency provided its customers with contingent or temporary workers. The employment contract between the plaintiff, one of those workers, and the staffing agency contained a binding arbitration clause, requiring an employee to arbitrate any disputes arising out of or relating to any disputes an employee had with the staffing agency or any of its clients. *Id.* at *1. The client eventually terminated the worker's assignment, and, in turn, the staffing agency terminated the worker's employment. *Id.* at *2. The Plaintiff filed a discrimination charge, alleging sexual discrimination and retaliation, with the EEOC and, eventually, received a right to sue letter. *Id.* On the staffing agency's motion, the district court concluded that the arbitration agreement was valid and enforceable as to the staffing agency and, by extension, to its clients, for whose benefit it had been made. *Id.* at *2-3. The district court concluded that the client was an intended third party beneficiary as evidenced by the language of the agreement which required arbitration of all disputes, "including disputes arising out of or related to the actions of [the staffing agency's] customers." *Id.* at *3.

TMMK must and does concede, however, that the language of the contract in *Dunkley* and the language of the contract in the matter before this Court are distinguishable. In the present matter, there is no language in Diomande's contract with Kelly which suggests that the shorter limitations period applies to claims against Kelly's clients. TMMK argues that, in light of the relationships between staffing agencies, their employees, and the clients of staffing agencies, one can easily imagine that the parties might wish or even intend to confer third party beneficiary status on the clients of a staffing agency when it comes to the employment contract between the staffing agency and its employees. However, in this instance, there is no language in the Agreement which shows that Diomande agreed to such an arrangement. Nor is the Court necessarily persuaded that further proof of the intent of Kelly and TMMK could demonstrate that Diomande intended to enter into such an agreement in light of the absence of any language directly referencing the third party beneficiary status of Kelly's client with respect to the limitations provision in his Agreement with Kelly and the lengths that Kelly went to in the same contract to draw a distinction between itself, as Diomande's employer, and its client.[1]  [*See, e.g.*, DE 7-2 at 8, Page ID# 39 ("I understand I

---

[1] Thus, the Court concludes that Diomande's Motion, pursuant to Fed. R. Civ. P. 56(f), seeking leave to conduct further discovery in this matter with respect to TMMK's claim that it was intended third-party beneficiary of the

am not an employee of any customer to which Kelly assigns me . . ."). TMMK's Motion for Summary Judgment will be denied.

### V.

Finally, the Court considers Plaintiff's Motion to Amend his complaint in which he seeks to add a claim against TMMK for its failure to hire him for a permanent position. TMMK's sole objection to the motion was premised on its argument that such a claim would be time barred for the same reasons as Diomande's other claims. As the Court has denied TMMK's motion for summary judgment on those grounds for the reasons stated above, it sees no reason to deny the Motion to Amend on those grounds. Plaintiff's motion will be granted. *See* Fed. R. Civ. P. 15 (providing that leave to amend complaint shall be freely given when justice so requires).

### VI.

For all of the reasons stated above, relief in favor of Defendant Kelly Services is warranted as Plaintiff's claims against it are time barred. Defendant TMMK's motion for summary judgment shall be denied, in the absence of undisputed evidence upon which this Court can conclude as a matter of law that it is an intended third party beneficiary to the contract between Diomande and Kelly Services and, thus, able to enforce the

---

contract between him and Kelly, is moot insofar as TMMK's motion has been denied.

limitations period stated in that contract. Additionally, Plaintiff's Motion to conduct discovery on that issue shall be denied as moot. Finally, Plaintiff's Motion to Amend his Complaint to state an additional claim for discrimination and retaliation under K.R.S. Chapter 344, arising out of the same facts, the termination of his temporary assignment with TMMK, is well taken.

Accordingly, **IT IS ORDERED**:

(1) That the Motion for Summary Judgment [DE 7] of Defendant Kelly Services, Inc., is **GRANTED**;

(2) That the Motion for Summary Judgment [DE 11] of Defendant Toyota Motor Manufacturing, Kentucky, Inc., is **DENIED**;

(3) That Plaintiff's Motion to Conduct Discovery [DE 20] is **DENIED AS MOOT**;

(4) That Plaintiff's Motion to Amend his Complaint [DE 21] is **GRANTED;**

(5) That the Clerk shall file the tendered Amended Complaint in the record of this matter.

This the 29th day of March, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge